Ranney, J.
This action was brought to recover certain assessments made upon a premium note given by the defendant to the plaintiff, to effect an insurance in the plaintiff’s company upon certain property of the defendant’s, and extending from May 14, 1851, to May 14, 1852. On trial in the district court, the plaintiff was nonsuited, and this writ is now prosecuted to reverse the judgment of that court. The questions , presented arise upon the charter of the insurance company, and certain amendments thereto; and, while they are somewhat difficult and important, they do not seem to be of such general interest as to require an extended exposition of the several provisions of the statutes, upon which reliance is placed by the parties. I am the more ready to omit this, as the case was very critically examined by the judge who delivered the opinion of the court below (10 W. L. J. 466), in the general conclusions of which we concur.
The company was incorporated on the 11th of March, 1843, with the powers usually conferred upon mutual insurance companies. Every person insuring in the company became a member thereof during the term specified in his policy, and no longer; and, as such, was entitled to vote for all officers of the institution, and participate in the control of its affairs.
To effect insurance, he was required to deposit his promissory note for such sum of money as the directors might determine upon, and to pay at the time, not exceeding ten per cent, thereon, “ for the purpose of discharging the incidental expenses of the institution, and the formation of a cash fund to meet losses promptly,” the i-emainder being subject to the call of the directors, when requisite for the payment of losses or expenses. He thereby be-350] came bound *to pay .his proportion of all losses and expenses happening or accruing in and to the company during the continuance of his policy, and if the whole of his premium note was not in that manner exhausted, he was entitled to have the balance given up and discharged. No difficulty appears, or is suggested, in determining the liability assumed by the members, or the man *351 ner of apportioning and enforcing it, under the provisions of this charter.
On the 12th of March, 1844, however, it was amended by an act containing two sections, as follows :
“ Seo. 1. That it may and shall be lawful for any person applying for insurance in the Ohio Mutual Eire Insurance Company at his, her, or their election, to pay to said company a certain definite sum of money, in full for such insurance; which said sum shall be in lieu and, place of a premium note; and such person or persons shall not be liable to said company during the continuance of his, her, or their policy, for any sum beyond the amount thus originally paid.
Seo. 2. That such sum or sums of money shall be retained as a fund for the payment of losses and expenses which may happen or accrue in and to said company, which said fund shall be exhausted before a resort shall be had to assessments upon premium notes deposited with said company; and this said fund and the premium notes deposited with said company, shall constitute the capital stock of the company, for the payment of losses and expenses : Provided, that no member of said company shall be liable for such losses or expenses to a greater amount than his or her premium note.”
On the part of the plaintiff, it is claimed that this act entirely changed the essential character of the company from a purely mutual to a mutual stock company; the cash paid for premiums and the premium notes being the capital of the company, and subject to appropriation upon any of its liabilities, with this single limitation, that the cash must be first exhausted before assessments were made upon the stock notes. Acting upon this construction, the directors applied all the cash premiums received during the time the defendants were members, to pre-existing liabilities of the company, and made the assessments upon the members for the whole amount of losses accruing during that period.
In this, we think, they were most clearly wrong. No such radical change is, or was intended to be effected by this act. *It [851 was still a mutual insurance company, with no power in the directors to control its assets as an independent company, or to divert them from the purposes to which the law and the contract of the parties had appropriated them. Every person insuring, whether by the payment of a cash premium, or the deposit of a premium *352 note, still became a member of the company, and this act simply gave the “ election” to him, whether he would become a member in the one way or the other; and if he chose the former, it expressly provides that the sum paid should “ be in lieu and place of a premium note,” and he should be liable to pay no more.
The second section devotes the fund thus raised and the premium notes to the payment of losses and expenses; requiring the cash fund to be first exhausted before resort is had to the premium notes. But to what losses, or in what manner, the section is entirely silent, and we are therefore remitted to the provisions of the original charter, which fixes the burden of a loss, at any particular time, upon those who are then members of the company. The amendment has effected no modification of these provisions further than to require it to be paid, so far as it can be, from cash policies before the premium notes are assessed. If that fund is sufficient to pay the loss, no assessment can be made; if it is insufficient, the balance is a debt against those who are then members of the company, by depositing premium notes, and must be assessed against and collected from them; and by no possibility can the burden be shifted, by postponing the payment, on to the fund arising from cash premiums afterward received. The cash premium belongs precisely where the.premium note, whose place it takes, would belong; and is subject to the same appropriation with this modification; it must be first applied, and no part of it can be withdrawn upon the expiration of the policy, although it should not have been all expended. Any other construction would make the holders of policies issued upon premium notes, bear the losses of those who paid the premium in cash, without the benefit of the money received of 852] ■ them, in lieu *of premium notes. There would certainly be very little mutuality in that. There is no difficulty in the practical working of this construction. When a loss happens, the money on hand derived from cash policies must be ascertained.' If it is enough to pay the loss, no assessment is required or authorized; if more than enough, the balance is carried forward, and allowed to accumulate to meet the next loss. If it is not enough, the balance is a burden, as I have said, on the premium notes on hand at the time the loss occurred.
The assessments in this case were therefore illegal, not simply erroneous. They were made upon an illegal basis, in violation of the law under which the directors derived their sole power to act, *353 They are attempting to raise, by assessment on the premium notes, what the law expressly declares shall not be done. The large sum received for cash policies, after the policy of the defendants was taken, has not been legally exhausted. They have a right to demand that it shall be before they are called on for assessments, and they can then only be made liable for their proportion of the balance after such appropriation shall have been made.
The judgment is affirmed.